should have stopped his car, alighted therefrom and proceeded to investigate for the approach of trains. We are not prepared to approve such requirement as this from travelers on a street within a corporation where if the company had observed the speed laws or had approached the crossing at a reasonable speed with proper signals and warnings such precautions are not shown to be necessary.

It must be further noticed as pertinent to the question of contributory negligence that Bethel was compelled to cross ten or twelve tracks before he came to the main track, and it is definitely shown that he stopped his car before he started across said switch tracks and made observation and looked for the approach of trains. It is contended that this stop was two or three hundred feet from the crossing and too far away from the danger of the main track to be effective against approaching trains. While this may be true it nevertheless is a circumstance tending to show the care and caution of Bethel in his approach to the main track and his desire to avoid any unnecessary risks or any unreasonable chances of a collision.

Other facts are in evidence reflecting on the question of his contributory negligence, but sufficient has been mentioned here to show that it is and was a question for the jury, and the circumstances surrounding it were such that its determination by the jury must be held to be conclusive.

The company complains of the admission in evidence of certain of its rules which it maintains were not pleaded in the petition and therefore could not be considered by the jury as reflecting on the alleged negligence of the company or the failure to observe the same by the company's employes as constituting negligence for which a recovery could be had. The purpose for which those rules were admitted is fully reviewed in the case of **Cincinnati Street Railway Co v Altemeir, Admr., 60 Oh St, 10.** While it would have been proper for the trial court to have explained to the jury for what purpose they were admitted, no request was made for such instruction by the company and the attention of the court was not directed to that feature of their admission, and no exceptions taken by the company to the omission of the court to give such instructions.

As before observed, there are many complaints made going to the refusal of the court to give certain special instructions requested by the company and also to the giving of certain instructions requested by Bethel. We do not regard these contentions as requiring any special notice. It

may be said, however, that special charge number twenty one, requested by the company and refused by the court, was properly refused by reason of the fact that it was entirely misleading under the peculiar circumstances shown by the evidence.

Another special charge requested by the company, being number sixteen, said to the jury that in the opinion of the court ordinance number ninety four of the city of Chillicothe, providing a speed limit for trains within the corporation, was unreasonable and an unnecessary restriction of the regulation of the railroad. The refusal to give this instruction was proper because that question was one for the court and should have been directed to the court in a proper manner, which was not done and which if done was not supported by that degree of proof required by the rule announced in the case of **Toledo, etc. Railway Co. v Miller, 108 Oh St, 388.**

In conclusion it is sufficient to say that we find no error in the record in this proceeding which would justify a reversal of the judgment and it is affirmed.

MAUCK and BLOSSER, JJ, concur.

## D & H COAL CO v LAY, et

Ohio Appeals, 5th Dist, Richland Co

Decided Jan 17, 1930

For full opinion see 173 NE 30; 37 Oh Ap 433 (Oh Bar 4-7-31).

## MILLER v HARPEST

Ohio Appeals, 2nd Dist, Montgomery Co
No 1016. Decided Dec 30, 1930

H. P. Jeffrey, Columbus, and T. C. Canny, Dayton, for Miller.

Marshall & Harlan, Dayton, for Harpest.

THE FACTS ARE STATED IN THE
OPINION

ALLREAD, J:

Russell G. Miller, a minor of the age of 16 years brought suit in the Court of Common Pleas by E. O. Miller his father as his next friend against G. H. Harpest to recover damages based upon a charge of negligence. The action in the Court of Common Pleas resulted in a verdict in favor of defendant signed by nine members of the jury. A motion for a new trial was filed and overruled and error is prosecuted to the Court of Appeals. The first assignment of error is based upon the exclusion of the father and next friend from the Court room. This depends upon the following order.

"Motion by Mr. Harlan for separation of the witnesses which motion was granted and all except the plaintiff and defendant were ordered by the Court to retire from the Court until their names were called.

Request of Mr. Jeffries (without the hearing of the jury) that the father of Russell and next friend of the plaintiff be permitted to remain in which denied by the defendant to which Mr. Canny noted several exceptions."

It is held in the case of **Sturges v Longworth 1 Oh St, 554** in a case where a lunatic defendant is brought into Court by publication and the guardian ad litem has been appointed who accepts the appointment, but files no answer that it is error for the Court to decree against a lunatic without an answer from his guardian ad litem.

On page 555 it is laid down that,

"It is said, however, that the answer of the guardian ad litem is a mere formal matter; that he can admit nothing; and that the Court are bound to have the claim of the plaintiff proved, whether there be an answer in or not. The question again recurs to us, if it is not necesasry that a guardian ad litem should act or do anything why is it necessary that he should be appointed at all? We have attempted to show that the thing of appointing a guardian ad litem to defend a lunatic was important and necessary as a matter of principle; but, supposing that the appointment and answer, and all the proceedings in reference to it, were merely formal, still this would not justify dispensing with them. Forms are the means used for carrying into effect the principles of the law. Error may be committed in dispensing with these formal matters the same as where there has been an error in principle."

Later on in the case of **Johnson, Guardian v Pomeroy 31 Oh St, 247** where the case of Sturges v Longworth is reviewed in the opinion by McIlvaine, J it was held,

" (1) An insane person may be sued and